UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ARTHUR JACKSON,

                Plaintiff,                    Case No. 1:13-cv-827

v.                                           Honorable Janet T. Neff

WILLIAM NELSON et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Burt, Bien, Versalles, Cooper, Mitchell, Blake, Bonnie, Simmons, Noon, Jones, Hardiman, Tucker and Rock. The Court will serve the complaint against Defendants Nelson, Wilkinson and Burdette.

**Discussion**

I.      Factual allegations

Plaintiff Arthur Jackson presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF), though a few of the allegations involve conduct preceding his transfer from the Chippewa Correctional Facility (URF) to MCF. Plaintiff sues URF Nurse (unknown) Bonnie and the following 15 employees at MCF: Dr. William Nelson; Warden Sherry Burt; Health Unit Manager Michael Wilkinson; Physician's Assistant (PA) Barbara Bien; Nurses Timothy Versalles, Charlotte Burdette, Brooke D. Cooper, Tai L. Blake,[1] and J. Rock; Sergeant (unknown) Mitchell; Grievance Coordinator L. Simmons; Correctional Officers D. Noon,[2] (unknown) Jones, and (unknown) Tucker; and Librarian Elisia Hardiman.

In his 48-page complaint, Plaintiff alleges that he has been denied necessary medical treatment for his stomach conditions. Plaintiff's allegations are repetitive and follow no particular order. The Court has attempted to summarize the specifics of the allegations.

According to Plaintiff, sometime before he was transferred from the URF to MCF, he was diagnosed as having a stomach infection caused by Helicobacter pylori (H. pylori), which can create stomach ulceration, bloody stools, bloating, pain, and, in some circumstances, cancer. At the time of his transfer to MCF on December 17, 2012, Plaintiff allegedly was in the middle of an antibiotic treatment for the bacterial infection. Plaintiff also alleges that, on a date shortly before

---

[1]In the caption and the listing of Defendants, Plaintiff alternately spells Defendant's name as "Brakes" and "Brake," and Blake. The Court will refer to Defendant as "Blake" because Plaintiff predominantly uses that name in the body of his complaint.

[2]As with Defendant Blake, Plaintiff alternately spells Defendant Noon's name as "Noom" and "Noon" in the caption and the listing of Defendants. The Court will refer to Defendant as "Noon" because Plaintiff predominantly uses that name in his complaint.

his transfer, during the 5:00 p.m. medication call, Defendant Bonnie improperly dispensed four medications, rather than the prescribed two, ostensibly with the specific intent to interfere with his treatment and to over-medicate him. Plaintiff claims that he experienced drowsiness and a lack of strength. Plaintiff filed a grievance about Bonnie's erroneous delivery of his medications. On or about December 23, 2012, Plaintiff filed an action in this Court against a number of URF employees. *See Jackson v. Woods et al.*, No. 2:13-cv-17 (W.D. Mich.).

When he arrived at MCF, Plaintiff was placed in segregation for 23 days, ostensibly without due process. Plaintiff alleges that his medication was transferred with him, but he complains about how it was administered. Nevertheless, following completion of his treatment, Plaintiff was feeling much better until the end of February 2013. He submitted a health care request form (kite), and he was scheduled for an appointment on March 3, 2013. At that time, after Plaintiff had described his symptoms, Defendant Bien prescribed Zantac, and she told Plaintiff that she would be ordering a lab test. No lab test was ordered. Plaintiff alleges that Bien failed to order the test because she was working in the interest of the Defendants he sued in his action against URF employees.

In April 2013, Defendant Nurse Blake provided Plaintiff with three stool-sample cards, in order to determine whether Plaintiff had blood in his stool. Plaintiff alleges that he returned the completed sample cards to Blake later in April. On April 22, 2013, Blake informed Plaintiff that the cards had been lost. Plaintiff alleges that the loss of the cards proves that Nurse Versalles, P.A. Bien, and Dr. Nelson stole the cards to "'conceal and suppress,' their "medical neglect"/deliberate indifference, and . . . to down-play the 'seriousness of <u>my</u> pain and suffering'. . . ." (Compl., docket #1, Page ID#12.)

Plaintiff also complains that Defendant Versalles retaliated against him for filing prior grievances by telling Defendant Nelson that, based on her observations, Plaintiff was lying about his diarrhea and was making himself belch. Plaintiff contends that Versalles' statement violated his rights under the First Amendment and MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ K. Plaintiff also complains that Versalles kept him waiting for 35-45 minutes for an appointment, purportedly while she looked for test results, and then told Defendant Cooper to send him back to his unit.

According to the complaint, Defendant Nelson has delayed ordering a lab test for H. pylori, thereby permitting cancer to be "breeded into [Plaintiff's] <u>body</u> . . . ." (*Id.*, Page ID #15.) Nelson also allegedly did not order an antibiotic until a dentist approached Nelson in June 2013 about Plaintiff's mouth ulcers and bleeding tongue. (*Id.*, Page ID##15-16.) The dentist told Plaintiff on July 13, 2013, that the problems in his mouth were caused by his stomach problems. (*Id.*, Page ID#25.) Plaintiff also alleges that Defendants Burdette, Nelson and Wilkinson refused to test and treat him for H. pylori, solely because he had previously been treated for the condition.

Plaintiff alleges that all Defendants acted in concert as part of a conspiracy to retaliate against Plaintiff, to deny him necessary medical care, and to keep him in pain. Plaintiff alleges that, on May 19, 2013, Defendant Cooper improperly discussed his medical conditions with a prison guard, Defendant Jones. When new mattresses were distributed, Defendant Tucker gave Plaintiff the worst one. Plaintiff alleges that he was only given a nitroglycerin pill, a pain pill and acid reducers when he claimed chest pain of 7/10 severity. In contrast, another prisoner was taken to the hospital when he complained of pain rated at 5/10.

Plaintiff alleges that he told Defendants Nelson, Bien, Versalles, Cooper and Blake, as well as Warden Burt, that he had a copy of a <u>Reader's Digest</u> from October 1993, in which the doctor who had discovered the cure for H. pylori stated that he had treated one patient five times, in order to clear up the disease. Plaintiff complains that Defendants ignored the article.

In addition, Plaintiff complains that Defendants Wilkinson and Simmons deprived him of due process and retaliated against him by not fairly handling his grievances. He complains that all Defendants have not provided an endoscopic examination to determine the presence of H. pylori, cancer, ulcers, reflux and gastritis. He also complains that Defendant Noon lied about his health care call-out being cancelled, stating that Plaintiff refused to see Defendant Bien.

On June 4, 2013, Defendant Rock provided Plaintiff with Zocain and Mylanta, as instructed by a doctor over the phone, based on Plaintiff's complaints about chest pain. The medication purportedly caused Plaintiff's mouth to break out worse. Plaintiff complains that he was not given a nitroglycerin pill.

On June 27, 2013, Defendant Noon gave Plaintiff the wrong pass, which delayed his law library visit. Also on June 27, 2013, Versalles allegedly inserted a needle into his arm, moved it and restuck it, causing a bruise and excess bleeding and pain. On July 10, 2013, Defendant Mitchell prevented Plaintiff from going back to his cell for his sunglasses, thereby causing Plaintiff pain and emotional distress. Plaintiff alleges that another prisoner had been permitted to return to the unit for his shoe detail. Plaintiff next complains that Defendant Burdette failed to respond to his complaints about his pain and internal bleeding. Both Burdette and Wilkinson allegedly have refused H. pylori treatment, because he previously was treated three times for the infection. Defendants instead tell Plaintiff that he has mental problems.

Plaintiff alleges that Defendant Burt ignored his complaints about health care and, as a supervisor, failed to ensure that other Defendants provided adequate medical treatment. In addition, Plaintiff alleges that all MCF Defendants are working in "cohoops" with URF personnel to help them avoid liability. (*Id.*, Page ID#22.)

In his next set of allegations, Plaintiff complains about Defendant Librarian Hardiman. In July 2013, Hardiman allegedly instructed Plaintiff to submit his entire pleading with exhibits, contrary to policy. She told Plaintiff that she could not review the pleading at that time and that he needed to reschedule. Plaintiff complained that he had an emergency need to file his pleadings because he had blood in his urine and his health was in danger. Hardiman offered to get Plaintiff medical assistance, and she pulled her protection pin, calling guards. Plaintiff was escorted to health care, where he was required to urinate in a jar. Plaintiff also complains that, when he arrived at health care, Defendant Rock attempted to make him sign a health care request form, causing him to incur a $5.00 medical charge. Plaintiff alleges that Hardiman acted with malice and in retaliation for Plaintiff's attempt to exercise his First Amendment rights. Hardiman eventually copied the document, but failed to copy exhibit AA, pages 199-217.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A.      Conspiracy**

Plaintiff alleges that all Defendants acted in conspiracy with one another and with officers at URF.  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'"  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  To state a claim for conspiracy under § 1983, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).  A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative.  His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete actions that

occurred over a period of time involving numerous individual officers. Plaintiff has provided no factual allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been subjected to treatment with which he disagrees by a variety of prison officials in various circumstances. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

### B. Supervisory Claims

Plaintiff alleges that Defendant Warden Burt failed adequately to respond to Plaintiff's grievances and kites and failed to supervise medical and custody personnel. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881,

888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Burt engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Burt.

## C. Grievances – Due Process

Plaintiff complains that Defendants L. Simmons and Michael Wilkinson improperly handled his grievances by failing to process them fairly. Plaintiff has no due process right to file a prison grievance or to have that grievance resolved in any particular way. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker,* 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf,* No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants Simmons' and Wilkinson's alleged conduct did not deprive him of due process.

## D.     Retaliation

Plaintiff alleges that all Defendants acted to deny his grievances and to deny necessary medical care out of a motivation to retaliate for his filing of unspecified grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).   "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez*, 826 F.2d at 1538-39); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish

retaliation claims" that will survive § 1915A screening). All of Plaintiff's retaliation claims are conclusory. Plaintiff simply contends that every Defendant necessarily must be conspiring with other Defendants to retaliate against him for filing one or more prior grievances against some MDOC employee at some time prior to the actions involved. Plaintiff's allegations of conspiracy are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## E. Eighth Amendment

Plaintiff alleges that numerous Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary

standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Although Plaintiff alleges Defendants acted with the requisite deliberate indifference in denying him medical care, his allegations against many of the Defendants are extremely limited.

Plaintiff alleges that URF Nurse Bonnie acted with deliberate indifference to his serious medical needs when she improperly dispensed Plaintiff's medications at a routine medication call. Specifically, Plaintiff alleges that Defendant Bonnie gave him four medications instead of two, which allegedly caused him to become drowsy. Although Plaintiff asserts that Bonnie intentionally administered the medications improperly, he alleges no facts that would support that conclusion. Instead, his factual allegation suggests nothing more than a mistake. As discussed, mere negligence

does not state a constitutional claim. *Estelle*, 429 U.S. at 105. Plaintiff therefore fails to state an Eighth Amendment claim against Defendant Bonnie.

Plaintiff alleges that Defendant Nurse Blake provided him with stool-sample cards in April 2013, in order to determine whether Plaintiff had blood in his urine. Plaintiff completed the cards and returned them. On April 22, 2013, Defendant Blake told Plaintiff that the cards had been lost. Plaintiff contends that the lost cards prove that Defendants Versalles, Bien and Nelson stole the cards in order to conceal their medical neglect. From Plaintiff's allegations, it is apparent that Defendant Blake did nothing more than provide the stool-sample cards to Plaintiff and inform him that the cards had been lost. Plaintiff makes no allegation that would suggest that Defendant Blake was in any way deliberately indifferent to his serious medical needs. Moreover, Plaintiff's allegation that Defendants Versalles, Bien and Nelson intentionally stole and suppressed the stool-sample cards is wholly conclusory. Plaintiff alleges no fact that would support such an inference.

Plaintiff's remaining allegations against Defendant PA Bien are similarly insufficient. He alleges that he had a medical appointment with Bien on March 3, 2013. At that time, she prescribed Zantac to treat his symptoms and told him that she would order a lab test. Nothing about the allegation suggests that Bien was deliberately indifferent to his medical needs. The fact that the test was never ordered shows nothing more than negligence. The only other allegation Plaintiff makes against Bien is that she ignored an article in a 1993 issue of <u>Reader's Digest</u>. Neither Bien nor any other Defendant[3] had an obligation to take medical instruction from the <u>Reader's Digest</u>. Such an allegation falls woefully short of stating an Eighth Amendment claim.

---

[3]Plaintiff alleges that Nelson, Bien, Versalles, Cooper, Blake and Burt all ignored the article.

As previously discussed, Plaintiff's allegation that Defendant Nurse Versalles (with Defendants Bien and Nelson) stole his stool-sample cards fails to state a claim. Plaintiff's remaining allegations against Defendant Versalles also are insufficient to state an Eighth Amendment claim.

Plaintiff alleges that Versalles kept him waiting for his appointment for 35 to 45 minutes and then told Defendant Cooper to send him back to his unit. Plaintiff also alleges that Defendant Versalles told Defendant Dr. Nelson that he believed that Plaintiff was not experiencing diarrhea and was causing himself to burp. Neither allegation supports an Eighth Amendment claim. As Plaintiff acknowledges, Versalles observed Plaintiff leaving a stool sample that admittedly was a soft solid, not diarrhea. Versalles did nothing more than express his opinion in light of his observations. Even if Plaintiff disagreed with Versalles, Versalles' conduct did not amount to deliberate indifference to Plaintiff's serious medical condition.

Plaintiff's complaints about Defendant Rock are even less substantial. He asserts that Rock, in accordance with doctor's orders, provided Plaintiff with Zocain and Mylanta to treat his complaints about chest pain. Plaintiff alleges that the medication caused his mouth to break out worse. Plaintiff does not allege that Rock knew Plaintiff would experience such a reaction and nevertheless made the decision to order the medication. The mere fact that Plaintiff experienced a negative reaction to a drug or drugs does not suggest that the ordered treatment resulted from deliberate indifference. Moreover, the mere fact that Defendant Rock attempted to have Plaintiff sign a health-care request form and authorize a co-pay of $5.00 does not violate any constitutional principle.

Plaintiff alleges that Defendant Sergeant Mitchell violated his rights under the Eighth Amendment when, while escorting Plaintiff to an appointment, he refused to allow Plaintiff to return

to his cell to get his prescribed sunglasses, thereby causing Plaintiff to experience pain upon being exposed to sunlight.  Plaintiff's allegation fails to support either prong of the deliberate indifference standard.  The allegation fails to demonstrate that his serious medical need for the sunglasses on a single occasion should have been obvious, even to a layperson.  *See Blackmore*, 390 F.3d at 899.  In addition, the allegation fails to support an inference that Mitchell was aware of that serious medical need or risk.  *See Farmer,* 511 U.S. at 837.

Next, Plaintiff alleges that Defendant Tucker attempted to harm Plaintiff by giving him the worst new mattress available.  Plaintiff's limited allegation is frivolous.  Plaintiff's personal opinion that he was given the worst mattress does not support a conclusion that his conditions of confinement fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Plaintiff complains that Defendant Noon, a correctional officer working in the health services unit, harassed him by failing to notify the health unit manager that he had arrived at health care, thereby making Petitioner wait over an hour to be seen.  Plaintiff also alleges that Defendant Noon misplaced Plaintiff's pass and ultimately gave him the wrong pass, causing Plaintiff to be delayed in going to the law library.  In addition, Plaintiff complains that, on July 1, 2013, Defendant Noon falsely told a unit officer that Plaintiff's health service call-out was cancelled.  None of the allegations rises to the level of a constitutional violation. The minor inconveniences alleged by Plaintiff do not rise to the level of an Eighth Amendment violation.

In sum, the Court concludes that Plaintiff has failed to state an Eighth Amendment claim against Defendants Bonnie, Versalles, Blake, Bien, Rock, Mitchell, Tucker and Noon. The Court concludes, however, that Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendants Nelson, Wilkinson and Burdette.

## F.  Defendant Hardiman

Plaintiff alleges that Defendant Hardiman refused to copy his entire pleading at the time he asked her to, telling him that he would need to make an appointment. When Plaintiff explained that his need was urgent because of his immediate health problems, Hardiman acted to meet his medical need by calling to have Plaintiff taken to health care. Arguably, Plaintiff intends to assert that Hardiman violated his right to access the courts by failing to copy his documents immediately.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts,

a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415

(2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, "the access claim . . . looks backward,[4] the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff has failed to allege that Hardiman's actions caused actual injury to any nonfrivolous appeal, habeas action, or civil rights action. Because Plaintiff claims that the pleading he intended to file was urgently necessary to protect his health, Plaintiff presumably was attempting to file a civil rights action. Plaintiff, however, has failed to indicate how his pursuit of that action was impaired. Plaintiff asked to have his pleading copied on July 18, 2013, and the instant action was filed on August 1, 2013. Moreover, Hardiman immediately addressed Plaintiff's allegedly urgent need for medical treatment by sending him to health care. Plaintiff wholly fails to demonstrate the requisite actual injury to his litigation efforts.

### G.     Defendants Cooper and Jones

Plaintiff alleges that Defendants Cooper and Jones violated his constitutional rights when Cooper told Jones something about Plaintiff's medical conditions. Arguably, Plaintiff claims

---

[4]Backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims . . . is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414 (footnotes omitted). In contrast, the "essence"of a forward-looking claim "is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413.

that Defendants disclosed his personal information in violation of his right to privacy under the

Fourteenth Amendment.

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education." (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.* at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). Plaintiff's claim implicates the latter

interest, i.e. the "individual's right to control the nature and extent of information released about that

individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d

673, 683 (6th Cir. 1998).

In *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit reviewed the

Supreme Court's opinions regarding the right to privacy, including *Whalen*, *Nixon*, and *Paul*, and

concluded that "the Constitution does not encompass a general right to nondisclosure of private

information." *Id.* at 1087-90. The court declined to "recognize a general constitutional right to have

disclosure of private information measured against the need for disclosure," reasoning that "[t]he

Framers . . . cannot have intended that the federal courts become involved in an inquiry nearly as

broad balancing almost every act of government . . . against its intrusion on a concept so vague,

undefinable, and all-encompassing as individual privacy." *Id.* at 1089-90. Consequently, the Sixth

Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id.* at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis – the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.[5]

Applying these standards, the Sixth Circuit repeatedly has rejected claims asserting a constitutional right to nondisclosure of personal information. *See, e.g., Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave disclose the nature of their illness to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure

---

[5]In contrast to the Sixth Circuit, other circuits hold that the disclosure of some kinds of personal information requires the court to balance the government's interests in disclosure against the individual's interest in avoiding disclosure. *See, e.g., Barry v. New York*, 712 F.2d 1554, 1559 (2d Cir. 1983); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987); *Woodland v. Houston*, 940 F.2d 134, 138 (5th Cir. 1991) (per curiam); *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). Although the Supreme Court recently contrasted the holding in *DeSanti* with the approach taken in the foregoing opinions, the Court declined to clarify the scope of a constitutional right to informational privacy. *See NASA v. Nelson*, ___ U.S. ___, 131 S.Ct. 746, 755-57 & n.9 (2011) (assuming, without deciding, that such a right existed in that case).

of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684 (nonconsensual disclosure at press conference of details of plaintiff's rape).

In *Lee*, plaintiff challenged a city's policy requiring its employees to disclose the nature of their illness to their immediate supervisors after taking sick leave. *Id*. at 261. The court noted that it had "not yet confronted circumstances involving the disclosure of medical records that, in [its] view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution." *Id*. The court upheld the policy, reasoning that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id*.

In a case similar to the instant one, the Sixth Circuit determined that the disclosure of an inmate's HIV-positive status to prison guards did not violate the inmate's rights under the Fourteenth Amendment. *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that the plaintiff's claim "is foreclosed by the letter and reasoning" of *DeSanti* ). *But see Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (distinguishing *Wigginton* and holding that an inmate has a

constitutionally-protected interest in avoiding disclosure of his HIV-positive status to other inmates, subject to legitimate penological interests).

The logic of *DeSanti*, *Wigginton* and *Lee* forecloses Plaintiff's Fourteenth Amendment claim because the disclosure alleged by Plaintiff does not implicate a fundamental interest. There is no relevant distinction between the disclosure of an inmate's HIV status to prison guards, which the Sixth Circuit has held does not implicate a fundamental interest, *Wigginton*, 21 F.3d at 740, and the disclosure to other prison officials that Plaintiff alleges here. *See, e.g. Coleman v. Martin,* 63 App'x. 791, 792 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board does not state a claim for relief under § 1983); *Holden v. Mich. Dep't of Corr.*, 2012 WL 2317538, at *5 (W.D. Mich. June 18, 2012) (no Fourteenth Amendment violation where plaintiff alleged that prison employee disclosed his HIV status to other prison officials and inmates); *Reeves v. Engelsgjerd,* No. 04-71411, 2005 WL 3534906, at *4 (E.D. Mich. Dec. 23, 2005) (doctor did not violate prisoner's constitutional rights by discussing his medical condition with non-medical staff and in front of other inmates).

In accordance with *DeSanti*, *Wigginton* and *Lee*, Plaintiff does not state a Fourteenth Amendment claim against Cooper and Jones because the disclosure of his medical conditions to another prison official does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment.

III.    Motions Seeking Preliminary Relief

Plaintiff has moved for a temporary restraining order and preliminary injunction, seeking immediate medical care consistent with the allegations of his verified complaint (docket #5). Plaintiff also has filed a motion seeking an immediate physical examination (docket #9). In

addition, Plaintiff has filed a motion demanding that all Defendants submit to a polygraph examination (docket #8)

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir.

1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claims. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Since filing his motions, Plaintiff has been transferred to the Macomb Correctional Facility. He therefore no longer remains under the medical care of or at risk from any of the named Defendants in this action. Moreover, Plaintiff "fails to explain how a preliminary injunction ordering polygraph tests – assuming the Court could even grant such relief in a preliminary injunction – is likely to prevent irreparable harm." *Porter v. Mcewan*, No. 3:11-CV-02021-LAB-BLM, 2012 WL 259859, at *1 (S.D. Cal. Jan. 27, 2012); *see also Anderson v. Kaydo*, No. 5:11cv138, 2012 WL 3135626, at *16 (E.D. Tex. Jul. 9, 2012), *report adopted in* 2012 WL 3136212 (E.D. Tex. Aug. 1, 2012) (holding that the court lacked jurisdiction to grant relief in the form of a polygraph examination in a § 1983 proceeding); *Bjorlin v. Hubbard*, No. CIV S-09-1793 GEB GGH P, 2010 WL 1689442, at *1 (E.D. Cal. Apr. 26, 2010) (holding that prisoner plaintiff's motion to require defendants to submit to a polygraph was frivolous).

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of

extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motions for preliminary relief (docket ##5, 8, 9) will be denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Burt, Bien, Versalles, Cooper, Mitchell, Blake, Bonnie, Simmons, Noon, Jones, Hardiman, Tucker and Rock will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Nelson, Wilkinson and Burdette.

An Order consistent with this Opinion will be entered.


Dated:  November 19, 2013          /s/ Janet T. Neff
                                   Janet T. Neff
                                   United States District Judge